IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE

Assigned on Briefs on February 27, 2018

**STATE OF TENNESSEE v. THOMAS LOUIS MOORE**

**Appeal from the Criminal Court for Bradley County**
**Nos. 14-CR-340 & 16-CR-372    Andrew M. Freiberg, Judge**

_____

**No. E2017-01236-CCA-R3-CD**

_____

The Defendant, Thomas Louis Moore, appeals as of right from the Bradley County Criminal Court's revocation of his probation and order of incarceration for the remainder of his ten-year sentence. The Defendant contends that the trial court abused its discretion in ordering execution of his sentence. Following our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ROBERT H. MONTGOMERY, JR., JJ., joined.

Richard Hughes, District Public Defender; and Paul O. Moyle IV, Assistant District Public Defender, for the appellant, Thomas Louis Moore.

Herbert H. Slatery III, Attorney General and Reporter; Courtney N. Orr, Assistant Attorney General; Stephen D. Crump, District Attorney General; and Andrew Watts, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTUAL BACKGROUND**

On October 31, 2016, the Defendant pled guilty to aggravated assault, Tennessee Code Annotated section 39-13-102, and burning of personal property, Tennessee Code Annotated section 39-14-303. The Defendant received a sentence of ten years with the sentence to be served on probation. According to the probation violation report, the Defendant reported and complied with all the terms of his probation, including keeping

his mental health appointments, until the Defendant tested positive for cocaine on April 4, 2017.

A violation of probation warrant was filed on April 11, 2017, alleging that the Defendant violated his probation by using cocaine, and a revocation hearing was held on May 16, 2017. At the revocation hearing, the Defendant admitted that he had smoked crack cocaine. The Defendant testified that he had long suffered from schizophrenia with auditory hallucinations, that he had multiple hospitalizations, and that he smoked crack cocaine to "stop this madness going on in [his] brain." The Defendant also testified that he lived alone in his own apartment, which he had furnished himself after being released from a group home. The Defendant testified that "the best place for you is at home under your own environment" and that he was "trying to create [his] own environment [while] still being positive to negative things [when they] come knocking on [his] door." Furthermore, the Defendant still attended all of his mental health treatment appointments while living at his apartment.

At the revocation hearing, the trial court called Camille McGill, a deputy clerk for the Criminal Court for Bradley County, to inquire about the Defendant's history of prior convictions. Ms. McGill found records for three prior felony convictions: a conviction for arson on August 8, 2005; a conviction for robbery on May 19, 1998; and a conviction for delivery of cocaine on May 19, 1998. The court entered these records into evidence.

The trial court next called Beverly Cameron, the court liaison for the probation office. Ms. Cameron testified that this violation was considered a technical violation and that technical violations based on a failed drug screen typically resulted in thirty to sixty days of incarceration followed by reinstatement to probation. Ms. Cameron also testified that each defendant was unique and not every defendant received the same sentences. The court entered into evidence the lab reports confirming the Defendant's April 4, 2017 drug screen as positive for cocaine.

The trial court considered the Defendant's "uniquely postured" mental health including numerous mental health evaluations, treatments, and hospitalizations, as well as the Defendant's past criminal record as a Range II, multiple offender. The court saw a pattern of violence, setting fires, and cocaine use. The court considered that the Defendant was presently convicted of aggravated assault and previously convicted of robbery; that the Defendant was presently convicted of burning personal property and previously convicted of arson; and that the Defendant had presently tested positive for cocaine and was previously convicted of delivering cocaine.

The trial court weighed the foregoing factors and stated its reasoning:

[I] really feel as though the first sentence was extraordinary because of [the Defendant], because he has potential. And to be a multiple range offender, which included violence and to get probation as a multiple Range II for violent conduct, specifically the aggravated assault with the knife, was really extraordinary. And unfortunately, there is a pattern that [the Defendant] does engage in as [borne] out in Exhibit 2, robbery. He does burn things. He's convicted presently for personal property. But he was convicted [f]or arson before. He was convicted of cocaine before. And here we have him testing positive for cocaine again.

And there is a . . . lengthy history of criminal conduct that has resulted in restraint or incarceration. So when we look at who would be apt to fall in, you've got an individual who's done two separate stints in the Department of Correction[:] [o]ne five[-]year, one seven[-]year. Convicted of multiple offenses, including those of violence. And [Tennessee Code Annotated section 40-35-102] talks about a person's prior convictions shall be considered as evidence. And anyone who is being sentenced for a third or subsequent felony conviction involving separate periods of incarceration, shall not be considered a favorable candidate for alternative sentence. Now, despite that, he was afforded such. And my order and this [c]ourt's memory, we hoped to put him not where he's getting his own apartment and doing his own outpatient treatment, but the goal and the intent was to try to get him somewhere where someone could look after him. That was the reason for the extraordinary [relief]. It wasn't to avoid . . . incarceration. It was just to face the reality that maybe there would be a different form of a secured facility, . . . or a residential facility, even if it was not secured that would provide him the kind of structure that would keep him from engaging in criminal activity.

And while certainly there is a history of compliance . . . it's not been that long.

. . . .

Yeah, about six months on a [ten]-year sentence. . . . And I don't know of any less restrictive means than detention and incarceration that will ensure justice, not just in this case, but . . . in light of his criminal history, but also to protect the public and to protect [the Defendant], quite honestly, from himself.

. . . .

I just feel strongly that in this case the plan of supervision was altered from what the [c]ourt had hoped when it fashioned that [ten]-year [sentence]. I hoped it would have been a lot more secure than it turned out to be. And it really was extraordinary relief on the front end.

The trial court revoked the probation and ordered the sentence into execution with a note that the Defendant should be housed in a mental health facility. The Defendant perfected a timely appeal.

## ANALYSIS

The Defendant contends that the trial court abused its discretion in ordering his sentence into execution because rehabilitative attempts had not recently been applied unsuccessfully and because the trial court had been influenced by facts not in evidence. The Defendant contends that the Defendant's misdemeanor criminal history constituted facts not in evidence and that the trial court improperly relied upon them in the statement, "I didn't get into his misdemeanor history. But everyone in this room knows who [the Defendant] is." The State responds that the record supports the trial court's decision.

A trial court may revoke a sentence of probation upon finding by a preponderance of the evidence that the defendant has violated the conditions of his release. Tenn. Code Ann. § 40-35-311(e). If the trial court revokes the probation, it has the right to "extend the defendant's period of probation supervision for any period not in excess of two (2) years," "commence the execution of the judgment as originally entered," or "[r]esentence the defendant for the remainder of the unexpired term to any community-based alternative to incarceration." Tenn. Code Ann. §§ 40-35-308(c), -35-311(e).

The decision to revoke probations rests within the sound discretion of the trial court. State v. Kendrick, 178 S.W.3d 734, 738 (Tenn. Crim. App. 2005); State v. Mitchell, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991). An appellate court will uphold a trial court's decision to revoke probation absent an abuse of discretion. State v. Beard, 189 S.W.3d 730, 735 (Tenn. Crim. App. 2005); State v. Webb, 130 S.W.3d 799, 842 (Tenn. Crim. App. 2003) (quoting State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991)).

In order to have revoked the Defendant's probation, the trial court needed only to have found that the Defendant violated his probation by a preponderance of the evidence. The Defendant does not dispute that he was in violation of the terms of his sentence by testing positive for cocaine. Having found the Defendant in violation, it was within the trial court's discretion to order the Defendant to serve the remainder of his sentence in confinement.

Furthermore, the trial court's decision to order the Defendant to serve the remainder of his sentence in confinement was supported by the trial court's conclusion that the Defendant needed more structured mental health treatment that he was unable to provide for himself during probation and that less-restrictive means had recently been applied unsuccessfully. The trial court found that the Defendant needed mental health treatment that involved a "structure that would keep him from engaging in criminal activity." In addition, the trial court noted that the Defendant had violated the terms of his probation only six months into a ten-year sentence. The trial court did not improperly rely on facts not in evidence in ordering the sentence into execution. Although the trial court referred to the Defendant's misdemeanor record when stating, "I didn't get into his misdemeanor history. But everyone in this room knows who [the Defendant] is[,]" the trial court did not rely on the misdemeanor record in reaching its conclusion. The trial court weighed the Defendant's felony record in evidence and the history of the Defendant's mental illness in making its ruling. Accordingly, we conclude that the trial court did not abuse its discretion and that this issue is without merit. The Defendant is not entitled to relief.

## CONCLUSION

Upon consideration of the foregoing and the record as a whole, the judgments of the trial court are affirmed.

_____

D. KELLY THOMAS, JR., JUDGE